## Burton v. Burton.

(Decided May 13, 1919.)

### Appeal from Boyd Circuit Court.

1. Divorce—Review on Appeal.—Although the Court of appeals cannot reverse a judgment of the circuit court granting a divorce, it may review the judgment and facts upon which the divorce was granted, for the purpose of determining whether the father instead of the mother was properly given the custody of their infant child, or whether the granting or refusal of alimony to the wife was proper.

2. Divorce—Alimony—Costs.—Where, as in this case, the evidence was not sufficient to authorize the divorce a vinculo granted the husband by the circuit court, but sufficient to show that husband and wife were both at fault respecting the troubles that marred their marital happiness, though not herself entitled to a divorce the wife, notwithstanding the granting of the divorce to the husband and dismissal by the court of her counterclaim for a divorce, should have been allowed alimony and her costs, including a reasonable fee to her attorney; the evidence showing her to be destitute of property or money and permanently afflicted with ill health.

3. Divorce—Care and Custody of Children.—Ordinarily, the custody of a female infant 12 years of age, when the parents are divorced, will be given the mother; but where, as in this case, the mother's ill health renders her incapable of caring for the child and the latter prefers to be with the father and is jointly and properly cared for by him, his mother and a single sister, all of whom are morally as well fitted to rear the child as the mother, the judgment of the circuit court giving the father custody of the child will not be disturbed.

WILHOIT & WILHOIT and J. F. STEWART for appellant.

JOHN T. DEIDRICH for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing in part and affirming in part.

The appellee obtained in this action a judgment in the court below for a divorce a vinculo from the appellant and for the custody of their infant daughter, now 12 years of age.

The appellant, by answer and counterclaim, controverted appellee's right to the divorce prayed in the petition; likewise his right to the custody of the daughter and sought a divorce a vinculo from him, the custody of the daughter and also alimony and costs of the action, including a resonable attorney's fee. The judgment granting appellee a divorce dismissed her counterclaim and she has appealed from so much of the judgment as refused her the custody of the daughter, alimony and costs.

The petition set up but a single legal ground of divorce, namely, the alleged abandonment of appellee by appellant of more than a year's duration. On the other hand the single ground of divorce alleged in the answer and counterclaim of appellant was that appellee had "habitually behaved toward her for a period of more

than six months in such a cruel and inhuman manner as to indicate a settled aversion to her and to destroy permanently her peace and happiness.''

The Court of Appeals cannot reverse a judgment of the chancellor granting a divorce, but may review the judgment and facts upon which the divorce was granted, for the purpose of determining whether the father instead of the mother was properly given the custody of their infant child, or whether the granting or refusal of alimony to the wife was proper. Benedict v. Benedict, 165 Ky. 499; Pope v. Pope, 161 Ky. 104.

Appellee's deposition was taken and read on the hearing, but appellant did not testify. His deposition was incompetent and, being excepted to, should have been excluded, as the ground of divorce relied on by him is not a ground with reference to which Ky. Stats., section 2117, subsections 2-3; Civil Code, section 606, makes the husband a competent witness; nor can it be claimed that his deposition was competent in rebuttal on account of the ground of divorce set up by the counterclaim of appellant, as she did not testify. But if appellee's deposition could be considered competent for any purpose, it only conduces to show that the alleged abandonment of him by appellant continued but about ten months, and that they lived together in the same home nine months after his action for the divorce was brought, at the end of which time, without advising her of his destination or in any manner providing for her, except to leave in the house food supplies that would not support her a week, he left Ashland and his home for California, taking the daughter with him, and after a month's stay in that state returned with the child to Ashland, Kentucky, shortly before giving his deposition, but did not thereafter live with appellant, who, in the meantime, had been removed by her father to his home near Ashland. It is true appellee testified that for eighteen months or two years before he instituted the action for divorce appellant had refused to sleep with him, and during that time occupied a separate bed in the same room, but he did not state that there was no cohabitation between them during that period, or that such right was denied him by appellant. The testimony of the infant daughter corroborates that of the father as to the occupancy of separate beds by the father and mother, but in other respects it goes no further than his and falls far short of establish-

ing the abandonment of the former by the latter. The mere fact that a husband and wife sleep in separate beds or in separate rooms, however long continued, can furnish no legal evidence of the abandonment of either by the other, nor be regarded as an obstacle to the connubial happiness of the parties. On the contrary, the practice, by reason of its strong advocacy by physicians and modern writers on hygene as essential to good health, has become a custom to which nearly every comfortably housed and properly regulated family in this country yields willing obedience.

It would serve no good purpose to discuss in detail the evidence found in the record. As in all hotly contested divorce cases, it is conflicting and in large part exaggerated, not to say improbable. That of appellee was furnished by the daughter and three or four female acquaintances of the family, and was to the effect that he provided well for his wife and daughter and was not unkind in his treatment of the former; that appellant was untidy in her person, uncleanly in her housekeeping, indifferent to appellant, neglectful of the daughter and often harsh in her treatment of the latter. The appellee's witnesses all admitted, however, that appellant's health became greatly impaired following the death of her youngest child, an infant, which occurred about four years before the institution by appellee of the suit for divorce, and had gradually grown worse until it finally made of her a confirmed invalid. On the other hand, an equal or greater number of witnesses, acquaintances of the family, residing in the neighborhood, testified in appellant's behalf that it was appellee's habit to leave his home every night immediately after the evening meal and remain away until a late hour, leaving appellant and their daughter without company during his absence; and that he was apparently indifferent to appellant's happiness, but did not fail to provide her with such necessaries as were actually required to supply her wants. These witnesses further testified that appellant's health after the death of her infant became and continud so poor that it rendered her incompetent to perform much of the labor required to maintain her home and discharge the duties owing by her to her family; that they had never found her lacking in affection for appellee or her daughter, or unduly harsh in her treatment of the latter, and that she kept the daughter decently and comfortably

clad and her person clean, was neat in her own clothing and person and kept her house, beds and other furniture in as decent state of cleanliness as could have been expected of an invalid housewife.

Fairly analyzed, the evidence fails to show that appellee was without fault in respect of the troubles that disturbed his and appellant's marital life. It is apparent from the evidence that he is a young man of vigorous physique and robust health, by nature somewhat coarse-grained and so resentful of appellant's ill health and consequent invalidism as that he became surly in his bearing toward her and finally indifferent to her happiness. The evidence also conduces to show that appellant's ill health had so prevented her performance of the household and other marital duties usually demanded of a wife as to affect her disposition, make her at times neglectful of her personal appearance, irritable toward appellee and perhaps fault-finding with him. It is not, therefore, difficult to understand how such conditions might lead to marital collisions that, in the absence of good judgment and mutual forbearance on the part of each, would result in great unhappiness to them.

As appellee was not substantially without fault, we are constrained to express the opinion, though its expression cannot affect the validity of the judgment of the circuit court in that regard, that he was not entitled to the divorce granted him. Nor do we think the ground of divorce relied on in the counterclaim of appellant was satisfactorily established by the evidence introduced in her behalf; therefore, we cannot say that the refusal of the divorce prayed by her was error. But under the evidence as a whole we think she was less in fault than appellee and for that reason the refusal of the circuit court to allow her alimony was error.

If either party had been granted a divorce *a mensa et thoro*, we would have been unwilling to say such a judgment was not authorized by the evidence. But as this was not done and the divorce *a vinculo* that was granted appellee will by its terms leave appellant penniless, appellee being more at fault than appellant regarding their marital troubles, should during the continuance of her bad health, or for a few years at least, be made to contribute to her support. Ramsey v. Ramsey, 162 Ky. 741; Pope v. Pope, 161 Ky. 104; Hughes v. Hughes, 162 Ky. 505. The circuit court, therefore, will, upon the

return of the case, grant appellant alimony, which may, if later found necessary, be changed or modified in accordance with the equities of the case. Staton v. Staton, 164 Ky. 688.

Appellant has no property of any kind, and on account of her bad health, can at present do little in the way of earning a support. Appellee is a railroad shop machinist and is, according to the evidence, earning $70.00 or $75.00 per month.

As the support and education of his and appellant's infant daughter devolve upon him, he cannot pay such alimony as might under more favorable circumstances be required of him, but in our opinion he should be compelled to pay appellant, by way of alimony, in quarterly installments, as much as ten per cent of his wages as earned from month to month, and the circuit court will so adjudge. She should also be adjudged her costs expended in resisting appellee's right to the divorce, including a fee of $25.00 to her attorneys, which we regard as reasonable.

We do not think it right to disturb at present the judgment in so far as it affects the custody of Louise Burton, the 12 year old infant daughter of appellant and appellee. The record leaves no doubt of the affection of each of the parents for the child, but it is patent that appellant's ill health would in the future, as it has in the past, prevent her from giving the child the care and attention she will particularly need.

On the other hand while in the custody of appellee the child will have the care and protection of appellee's mother and sister, grandmother and aunt of the child, both of whom have a great affection for the child and are greatly beloved by her.

Ordinarily, we would be strongly inclined to give the custody of such an infant to the mother, but for the welfare of the infant we think it better in the instant case to leave her with the father. Such is also the wish of the child, and where the child has reached the age of discretion, its wishes as to its custody will be considered, but are not controlling. In every instance, however, the welfare of the child must guide us, and if its welfare should imperatively require such a step, it would be our duty to take the custody of the child from both parents and confer it upon another better able to properly care for the child. Shallcross v. Shallcross, 135 Ky. 418.

We think, however, that the judgment in this case should have given appellant opportunity to see and be with her daughter, say at quarterly intervals, during each year and the daughter allowed to remain with the mother not exceeding a week each time. The judgment must be modified to this end.

For the reasons indicated the judgment of the circuit court is reversed, in so far as refused appellant alimony and cost, including an attorney's fee, but in other respects affirmed, and cause remanded for such change and modification of the judgment as will conform to this opinion.